## Cephas M. Glover v. Harriet Tousley.

*Contract—Construction.*

Plaintiff and his uncle each owned an undivided one-quarter interest in a grist-mill, and in the lease of the land upon which the mill stood. The remaining interest was owned by two daughters of the defendant as heirs at law of their deceased father, who was a non-resident of this State at the time of his death, subject to the rights of the defendant in said property as his widow. After plaintiff had operated the mill for about two years under an agreement to pay to said heirs a specific sum as rental, the husband of one of the daughters, who were both non-residents, called upon the plaintiff, and, after expressing a desire to dispose of the mill property, and in answer to plaintiff's statement that he would not continue to operate the mill for its earnings, and was ready to step down and out, stated that he did not wish to close up the mill, as it stood on leased ground, and must be kept in operation; that he wished plaintiff to continue to run it, and do the best he could, and, when a sale was made, the heirs would do

what was right by plaintiff for keeping the mill running. About 16 months after this interview, during which time plaintiff had continued to operate the mill, the attorney for the heirs wrote him regarding the rent, which was in arrear, and plaintiff, in his reply, referred to the interview with the husband, and stated that he said that he did not wish to take advantage of plaintiff in any way, but wished that he could sell the mill, so as to straighten up the affair. Further correspondence, relating to endeavors by both parties to dispose of the property, followed, in which plaintiff was pressed for the rent, and a suit for its collection suggested, and in which he made no mention of any counter-claim or claim for services. After operating the mill for over three years in reliance, as he claimed, upon said conversation, the plaintiff brought this suit to recover a *per diem* of $1.25, less the earnings of the mill during that time, as compensation for his services. And it is held that the promise relied upon was nothing more than a promise of indulgence respecting the rent of the half interest owned by the heirs, and cannot be tortured into a promise on their part to pay to the owners of the remaining one-half, or to plaintiff, the entire expense of the care of the mill for the period claimed for, during all of which time no claim for such payment was made or hinted at by him.

Error to Berrien.   (O'Hara, J.)   Submitted on briefs April 10, 1894.   Decided June 26, 1894.

*Assumpsit.*   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*Edward Bacon,* for appellant.

*Alex. Emery* and *George S. Clapp,* for plaintiff.

McGRATH, C. J.   On the 15th of October, 1877, one Blakeslee leased to Andrew J. Glover & Son, for an indefinite period, a certain parcel of land for a grist-mill site.   Glover & Son built the mill, and constructed the dam on lands owned by Hiram S. Tousley.   On the 24th of August, 1878, the Glovers conveyed to Hiram S. Tousley an undivided half interest in said grist-mill and lease, the Glovers agreeing to pay and discharge a certain mort-

gage upon said property. The Glovers continued to operate said mill, paying to Tousley an annual rental for the undivided half owned by Tousley. Tousley died in February, 1884, leaving a widow and two daughters, Ella J. Wood and Frances Matson. At the time of his death, neither Tousley nor his wife nor daughters resided in the State of Michigan, nor had any of them ever resided in the State. The Glovers were notified of the death of Tousley, and continued to pay rent at the same rate to Byron A. Wood, the husband of one of the heirs, who resided out of the State, and who had carried on the correspondence with the Glovers. In March, 1884, after the death of Hiram S. Tousley, Byron A. Wood came to Michigan, and had a conference with Andrew J. Glover, who testifies that he brought with him a letter signed by Harriet Tousley; that said letter was lost; that the substance of the letter was as follows:

"The bearer, Mr. Byron A. Wood, is my son-in-law. He has come to confer with you in regard to the rent of the mill; also in regard to the sale of a piece of land I was selling for them. Any money paid him would be duly credited by me."

Andrew J. Glover further testifies that no other arrangements were made at that time with reference to the payment of rent, nor does it appear that the lease or terms of occupancy or payment of rent was at that time referred to.

In January, 1885, Wood, as agent for Harriet Tousley and the other heirs, wrote Glover, saying:

"Nothing having been said to the contrary, I assume that you are to take the mill this year on same terms as last, viz., you to have the use of one-half of the mill, and *pay us* therefor $325 in quarterly payments, we paying half of the taxes and half of the necessary repairs."

In November, 1885, the Glovers being in arrear for rent, one Prickett called upon them in behalf of the heirs, and

they executed mortgages upon their interest in the mill to secure the accumulated rent. These mortgages were taken in the name of Harriet Tousley, for convenience in collection. Within a few days after the execution of said mortgages, Andrew J. Glover, Jr., conveyed his one-quarter interest in the mill to plaintiff, and Andrew .J. Glover, Sr., conveyed his interest to his brother James Glover. The mill was afterwards operated by plaintiff. It does not appear whether James Glover occupied or operated the mill jointly with plaintiff or not. The further correspondence was carried on by plaintiff, who paid one of the notes secured by the mortgages aforesaid. Further correspondence was had relative to improvements upon the mill and the payment of the rent.

In August, 1887, Wood came to Michigan, and called upon plaintiff, and plaintiff swears that at that time both he and Wood expressed a desire to dispose of the property; that Wood said that, "rather than lose a sale of the mill, I would be willing to take $1,500 for their interest."

Plaintiff further testifies:

"I told Mr. Wood, if they couldn't make some arrangement to put in new machinery some way or other, that I wouldn't continue to stay there and take charge of the property for the earnings of the mill, for the earnings of the mill were so small I couldn't stand it to live on, and I would not take charge of it any longer. For my part, I was ready to step down and out. He says: 'I don't want you to close the mill up. It will not do to close it up, because it stands on a piece of leased ground, and it must be kept in operation.' * * * He wanted me to continue on and do the best I could with it. When they made a sale of the mill, they would do what was right by me for so doing. And I continued on."

Relying upon this conversation, plaintiff claims to have continued to operate and care for the mill from August 8, 1887, to October 24, 1890,—1,002 days,—at $1.25 per day, making a total of $1,252.50, and sues Harriet Tousley to

recover that sum, less the earnings from mill and pasturage for the same period,—$597.37.[1]

In December, 1888, the attorney for the Tousley heirs again wrote to plaintiff respecting the rent for the mill. In reply plaintiff writes to the attorney, saying:

"Mr. Wood was here to the mill the 9th of August, 1887, and saw that the mill was not doing but very little business, and he said that he did not wish to take advantage of me in any way, but wished he could sell the mill, so as to straighten up the affair. He has tried to sell their interest. * * * If it be a fair question, I would like to know what papers he has sent for collection."

The correspondence continued up to the early part of 1889, and relates to endeavors of both parties to dispose of the mill property. In this correspondence, plaintiff is being pressed for the rent, and suit is being suggested as a means of enforcing collection from him; yet no mention is made of any counter-claim or claim for services. It appears that the property was sold on the foreclosure of the original mortgage given to Blakeslee, referred to in the conveyance from the Glovers to Hiram S. Tousley.

Plaintiff owned one-quarter interest in the mill; his uncle owned another quarter; and the Tousley heirs an undivided one-half interest. Plaintiff had been operating the mill under an agreement to pay to the Tousley heirs a specific sum as rental. He now sets up a claim against Harriet Tousley, based solely upon the conversation which

---

[1] Plaintiff declared specially, " for that, whereas, defendant, for three years and more before the commencement of this suit, employed this plaintiff to work and labor for her in her mill at Galien, and to keep the possession for her and her heirs, and to keep the business of said mill going, and to pay him therefor what his services rendered were reasonably worth, and that, for his services and labor so rendered to the defendant, there is justly due to the plaintiff from said defendant, by reason of the premises, the sum of $10,000." The common counts were added, with a bill of particulars setting forth the items stated in the opinion.

he claims to have had with Wood on August 8, 1887, for his services for three years, for the entire care of said mill property.

It can hardly be contended that Wood's promise, if made as alleged, was anything more than a promise of indulgence respecting the rent of the half interest. ,It cannot be tortured into a promise on the part of the heirs, who had but a half interest in the ˑmill, to pay to the owners of the other half, or to the owner of a quarter interest, the entire expense of the care of ˑthe mill for three years, during all of which time no claim was made or hinted at.    Plaintiff's letter of December, 1888,—the only one in which the interview with Wood is referred to, —clearly indicates that the promise made by Wood was one of indulgence merely.

The judgment is reversed, and a new trial granted.

The other Justices concurred.